THE WAINRIGHT TRUST COMPANY, ADMINISTRATOR *v.* THE MURAT TEMPLE ASSOCIATION ET AL.

[No. 26,876. Filed June 23, 1937. Rehearing denied September 21, 1937.]

*Henry M. Dowling* and *Ralph H. Waltz,* for appellant.
*Claycombe & Stump,* for appellees.

FANSLER, C. J.—This is an action "for specific performance" of a contract obligation incurred by The Murat Temple Association in the issuance of 120 shares of its preferred stock, which was owned by John S. Stewart at the time of his death. There was a trial, special findings of fact, conclusions of law, and judgment for appellee.

The errors assigned and presented are based upon the conclusions of law and upon the overruling of a motion for a new trial upon the ground that the finding and decision of the court are contrary to law and are not sustained by sufficient evidence.

There is no substantial conflict in the evidence. It appears that The Murat Temple Association, a corporation, was organized in 1913. Its original capitalization was $175,000 common stock and $350,000 preferred stock, all of which was issued, and 120 shares or $12,000 par value of which was acquired by appellant's testator in the year 1913. The preferred stock certificates provide that the holder shall be entitled to receive a quarterly dividend of $1\frac{1}{4}$ per cent, which shall be cumulative, and that no dividend shall be set aside or paid upon the common stock while any part of the preferred stock is outstanding. The stock is redeemable on the 1st day

of April, 1932. In 1922, while $165,000 of the original issue of preferred stock, including the $12,000 here involved, was outstanding and unredeemed, the appellee corporation adopted and filed in the office of the Secretary of State a resolution increasing its capital stock, and providing for the issue of $400,000 of series B preferred stock. This preferred stock was sold and the proceeds used for the payment of obligations and debts of the appellee corporation outstanding at the time of the issue. These debts and obligations were entitled to priority of payment over the first issue of preferred stock. Thereafter, and prior to June, 1923, a total of $10,000 of the first preferred stock was redeemed. In July, 1923, the corporation issued $100,000 of preferred series C stock. It was provided in the resolutions and in the certificates that the series B and C stocks were junior to the first issue. There were redemptions of the original preferred stock from time to time, and on April 1, 1932, there was outstanding and unredeemed $60,000 of the original preferred stock, including appellant's $12,000. It is expressly found by the trial court that, on April 1, 1932, and at all times thereafter, there were no cash funds of the appellee corporation, owned or controlled by it, out of which the principal of the $60,000 of preferred stock could be redeemed. It is also found that there was not at any time any wrongful diversion of funds to which appellant or any other holder of the first issue of preferred stock had any priority of right or claim, and that neither the appellee corporation nor its officers have at any time wrongfully misused or misapplied any of the money or assets of the appellee corporation nor its officers have at any time wrongfully misused or misapplied any of the money or assets of the appellee corporation.

At the time the series B and series C preferred stock was issued and sold, the appellee corporation was in

debt more than $500,000, and the money raised by the sale of series B and series C stock was used to pay this indebtedness. The principal, and practically the only, asset of the appellee corporation consisted of real estate, a building known as "The Murat Temple." This building was during all the time involved leased to the fraternal order known as "Murat Temple Ancient Arabic Order of Nobles of the Mystic Shrine," and the only income of the appellee corporation consisted of rentals under this lease. The fraternal order has been in arrears in its rental. As a means of providing for the sale and redemption of the series B and series C stock, so that the obligations and debts of the appellee corporation could be paid, the fraternal order arranged for and procured the pledge of donations and contributions to be made from time to time, to be paid to a trustee; the fund to be paid out in redemption of the series B and series C preferred stock, and also the first preferred stock, under the direction of the fraternal order. The disposition of these funds in the hands of the trustee was not controlled by, and was not subject to the direction of, the appellee corporation. During 1923 to 1932, inclusive, $150,000 of series B stock and $40,000 of series C stock were redeemed from this fund, and various dividends were paid. During the same period, $95,000 of the original preferred stock was redeemed and paid.

Appellant contends that the issuing of the series B and series C stock was unlawful, but with this contention we are not concerned. It is clear that the stock in question was junior to appellant's preferred stock in every respect, and that no funds which appellee had, and which appellant had the right to have applied to the payment of its stock, were diverted or paid upon the series B or series C stock. On the other hand, the proceeds of the sale of the series B

and series C stock were used to pay debts which had precedence over appellant's preferred stock, and all of which might have been paid out of funds otherwise payable to appellant before appellant could claim payment. If the issues were illegal, appellant was not injured.

But appellant complains that the donations and gifts, placed in the hands of the trustee to be expended in the redemption of preferred stock, under the direction of the fraternal order, should have been applied first to the redemption of the original preferred stock; that the association and the fraternal order are not separate entities; that the fraternal order made large donations and contributions to the association in excess of reasonable rentals; that these donations should in law be treated as payment of obligations, and that these funds therefore should have been treated as legitimate income of the association, against which appellant's preferred stock would have priority of right to payment over the other preferred issue. But this contention is not borne out by the facts. There is not an identity of persons. The corporation and the fraternal order are distinct entities. Donors of the funds pledged for the payment of the preferred stock had the right to choose, or direct that the fraternal order might choose, the stock to be first redeemed. The contributions were not by the fraternal order to the corporation, but by the donors, through the fraternal order, to the corporation, for an express purpose. Promissory notes, rather than the series B and series C stock, might have been issued for the obligations of the corporation, and donations subscribed to pay these notes. The purpose and effect is the same. In law, the funds which have been used to redeem the junior preferred issues never belonged to the appellee corporation. Equity, looking through the form to the substance, must see the debt prior in right of payment to appellant's claim, which is

480

being paid, by the donations, to the benefit, and not to the injury, of appellant.

Appellant sought specific performance, which is assumed to mean payment. It thus assumed the burden of proving that there were funds out of which payment could lawfully be made. There is no finding of this fact. There are findings that the directors have made efforts to procure funds with which to pay; that it is not now practicable for the appellee corporation to redeem the stock, and that it is not financially able to do so. Appellant did not establish its right to recover.

Judgment affirmed.